IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CINDY L. DOERGE,

        Plaintiff,

vs.

Case No. 05-1019-JTM

CRUM'S ENTERPRISES, INC., et al.,

        Defendants.

MEMORANDUM AND ORDER

This matter is before the court on the defendants' Motion to Dismiss, which seeks dismissal of the action on the grounds of a lack of subject matter jurisdiction. Defendants argue that the present action cannot be maintained under Title VII, since the plaintiff's employer, Crum's Enterprises, Inc., the operator of Crum's Beauty College, employed fewer than fifteen people. A similar motion previously advanced by defendants was denied on February 3, 2003, the court noting the "utter lack of any factual basis for the desired ruling." (Dkt. No. 40, at 2).

The parties agree that Exhibit 1 attached to the defendant's Memorandum in support shows the status of the beauty college's employees for the relevant time period. Exhibit 1 shows that during the relevant time period, Crum's Beauty College employed between twelve and thirteen workers. In addition to these thirteen employees, the college also employed two additional workers, Jimmy Bond and Cheryl Wilson, but these two were never employed at the same time. Exhibit 2 shows the number of employees at the beauty college for the 2001, 2002, and 2003 tax years.

The court notes that Doerge argues that during the third and fourth quarters of 2003, Bond and Wilson worked together simultaneously. The only evidence cited by plaintiff in support of this allegation, Kansas Wage Report and Unemployment Tax Returns submitted by the beauty college, fails to support

the fact claim. The tax returns list only employees receiving any wages during the relevant quarter, they do not show that Bond and Wilson were employed during these same weeks. Further, plaintiff argues that the court should also consider Kenneth Seabrook, on medical leave from the beauty college in the first quarter of 2004, as an employee. Plaintiff provides no authority for the proposition that a person on unpaid medical leave should be considered an employee for Title VII. "A plain reading of the language of section 2000e(b) can yield only the conclusion that an employee is counted only in the weeks in which he worked every day of the work week. Any other interpretation would render the words 'for each working day' superfluous." *Richardson v. Bedford Place Housing Phase I,* 855 F.Supp. 366, 370 (N.D. Ga. 1994). Plaintiff has failed to show that the actual work days by Seabrook would bring the beauty college into the realm of Title VII.

As a result, the issue in the present motion is whether four additional persons — Lucile Crum Jelinek, Charles Crum, Brad Olsen, and Tom Simon — should be considered employees for the college. Although styled as a motion to dismiss, defendant's motion raises contested factual questions and is in substance a motion for summary judgment on the issue of jurisdiction. In its previous order, the court explicitly observed: "By its nature, defendants' motion is substantively a motion for summary judgment rather than dismissal, since it is grounded on factual questions outside the pleadings." (Dkt. No. 40, at 2).

Neither the defendants' memorandum in support nor the plaintiff's memorandum in opposition to the motion substantially complies with D.Kan. R. 56 governing summary judgment pleadings, interweaving their factual averments into the legal argument. However, both parties have submitted affidavits in connection with their motions, and the issues are not so complex as to prevent the court from determining which facts are controverted and uncontroverted.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing

party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

Title VII prohibits unlawful employment practices by employers. For purposes of the Act, an employer is "a person engaged in an industry who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b).

Charles Crum is the son of Lucile Crum Jelinek, the owner of the beauty college. He has a 2% ownership interest in the business. He has not ventured onto school grounds since early in this litigation and the complaint process leading up to it. Crum is laboring under a progressive mental infirmity, and has been unable to participate in the running of the school since the earliest date listed in the plaintiff's complaint. His only function at the school was to fill its vending machines, a task he performed without compensation or any set schedule. If he failed to appear to fill the vending machines, this task was performed by another

at the school. He was never required to be present or to even complete the task of filling the vending machines. He simply did this when he was able to do so.

Plaintiff has submitted the affidavits of herself and a former employee of the beauty college, Alicia Campbell-Paris. The latter states in her affidavit she saw Charles Crum "receiving cash from defendant Crum's Enterprises, Inc., from both front desk and the vending machine frequently." (Campbell-Paris Aff. at ¶ 3). He was there "all day long." (Id. at ¶ 4). "On the rare occasion" when he was not there, "he was getting food products from Sam's Club in Topeka for the vending machines." (Id. at ¶ 5). Plaintiff Doerge's affidavit repeats, quite literally, these statements. The averments are verbatim repetitions of those of Campbell-Paris.

Doerge speculates that the absence of tax information showing any distributions to Charles Crum suggests that he "must have been paid 'under the table.'" (Resp. at 2). But plaintiff provides nothing more than speculation to support this claim. The facts indicate that Charles Crum had a 2% interest in the business, and there is no evidence that he actually received any compensation in the form of salary or profit distributions. The evidence that Charles Crum was occasionally given cash at the college is consistent with his performance of the mundane task of periodically filling the vending machines.

Lucile Crum Jelinek is an owner of Crum's Enterprises. She has never received a salary from the company and has no day-to-day duties. Her only compensation has been profit distributions and rent paid by the college. Crum Jelinek also owns several other buildings, including some apartment buildings, in her personal capacity. She makes hiring and firing decisions, decides business strategy and policy and her approval must be sought for major purchases. Ms. Jelinek has never drawn a salary from the business, has no set schedule or working hours and does not meet with any clients or perform any services at the school.

Plaintiff suggests that the rent paid to Crum Jelinek was in fact a disguised salary, but again, this is nothing more than speculation. Plaintiff provides no evidence to make such an inference. The only evidence submitted in connection with plaintiff's response are the affidavits of Campbell-Paris and Doerge, both of which touch only on their observations of Charles Crum. There is no evidence that the rent paid was in excess of market value. There is no evidence which would controvert the explicit averments of

4

Crum Jelinek that she never performs any day-to-day work at the beauty college, and that her only tasks are those typical of the owner of any small business.

The Supreme Court addressed the issue of when a person with ownership interests may be considered an "employee" within the meaning of Title VII in *Clackamas Gastroentereology Assoc. v. Wells*, 538 U.S. 440, 449-50 (2003), where the court explicitly adopted as persuasive the factors used for this purpose by the EEOC, which include:

> "Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work
> "Whether and, if so, to what extent the organization supervises the individual's work
> "Whether the individual reports to someone higher in the organization
> "Whether and, if so, to what extent the individual is able to influence the organization
> "Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts
> "Whether the individual shares in the profits, losses, and liabilities of the organization."

quoting EEOC Compliance Manual § 605-0009. The Court stressed that the determination of whether a given person should be considered an owner or an employee is a function of all the circumstances present, and no one single factor is dispositive. 538 U.S. at 451.

Given this standard, the court finds that Crum and Crum Jelinek should not be considered employees of the beauty college. Both have ownership interests in the college; neither draws a salary. Crum Jelinek has no day-to-day duties at the college, but instead decides on hiring and firing. Her work is not supervised, and she shares the the profits of the company. Charles Crum performs only the most minimal of tasks at the college — stocking the vending machines — and did so in what was apparently an entirely optional manner: if he did not perform the task, someone else would. His work was not supervised by any person higher in the beauty college. There is no evidence the beauty college ever set any rules for his conduct. Given all the circumstances presented, the court finds that Crum and Crum Jelinek were not employees of the beauty college within the meaning of Title VII.

Both Brad Olsen and Tom Simon do repair work, both at the apartments privately owned by Crum Jelinek and at the beauty college. Crum Jelinek paid Olsen and Simon $10.00 per hour for this work. They were given handyman tasks on an as-needed basis.

According to defendants, Olsen and Simon were independent contractors, paid by the hour and working only on specific tasks. Crum Jelinek and the college did not give them instructions as to how to perform the repairs, or the time that the work should be performed. Olsen and Simon used their own tools in performing the repairs. Neither Olsen nor Simon received more than $600 in any year for their work at the college. According to defendants, Olsen and Simon both had autonomy in setting their schedules and were merely given a task; they chose when and how to do it, using their own judgment and their own tools. Neither had any written agreement with the college, nor performed work on any type of a set schedule.

Doerge in her response makes no factual averment or legal argument as to why Olsen and Simon should not be considered independent contractors rather than employees of the beauty college.

However, Doerge further argues that, if the court does find that the beauty college had fewer than fifteen employees, her claims still cognizable under 42 U.S.C. § 1981 and § 1985 should survive. In her first cause of action, Doerge alleges that she was fired for opposing racist comments by Charles Crum. In her sixth cause of action, Doerge alleges that she was deprived of her civil rights by a conspiracy.

Section 1981 provides "the only refuge under federal law from race-based employment discrimination by those who hire fewer than 15 employees." *Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.*, 160 F.3d 1048, 1049 (5th Cir.1998). Defendants have filed no reply to Doerge's response, and have made no argument as to why plaintiff's other federal claims do not provide a basis for federal question jurisdiction.

Doerge argues that "[a]ssuming arguendo that plaintiff has stated her sole federal claim under 42 U.S.C. § 1981, this court has federal question subject matter jurisdiction of her case and *none* of plaintiff's claims should be dismissed." Resp. at 6 (emphasis added). This states the matter too broadly. The court will dismiss from the case plaintiff's claims purporting to state a claim under Title VII, since the defendant beauty college is not considered an "employer" within the meaning of that statute. However, the court will retain jurisdiction of the remaining federal claims as well as the pendent claims under state law.

IT IS ACCORDINGLY ORDERED this 15th day of June, 2006, that the defendants' Motion to Dismiss (Dkt. No. 45) is granted as to plaintiff's claims advanced under Title VII and is otherwise denied.

s/ J. Thomas Marten  
J. THOMAS MARTEN, JUDGE